**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jan E. Kruska, ) | No. CV-08-00054-PHX-SMM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| Perverted Justice Foundation ) | |
| Incorporated.Org, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendant Christopher Brocious' ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint, filed September 2, 2010 (Doc. 269) and Plaintiff Jan E. Kruska's ("Plaintiff") Motion for Summary Judgment, filed September 10, 2010 (Doc. 274). Defendant's motion is brought on the grounds that Defendant is immune from suit under the Communications Decency Act, 47 U.S.C. § 230, and that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. 274.) Plaintiff responded by arguing that Defendant's 12(b)(6) motion was untimely because Defendant had previously filed two Rule 12(b) motions to dismiss. (Doc. 274.) In Plaintiff's response, she further requested that the Court grant summary judgment in her favor. (Doc. 274.) After consideration of the issues, the Court finds the following.[1]

---

[1] Defendant requested oral argument in connection with his Motion to Dismiss. (Doc. 269). The parties have had the opportunity to submit briefing. Accordingly, the Court finds the pending motions suitable for decision without oral argument and Defendant's request is denied. See L.R. Civ. 7.2(f).

**BACKGROUND**

On January 10, 2008, Plaintiff brought suit against Defendant alleging: (1) intentional infliction of emotional distress; (2) defamation; (3) Racketeer Influenced and Corrupt Organizations Act violations; (4) cyberstalking and cyberharassment; (5) Digital Millennium Copyright Act violations; and (6) prima facie tort. (Doc. 1.) Defendant then filed a Cross-Motion to Dismiss based upon lack of personal jurisdiction, improper venue, and insufficient service of process. (Doc. 68.) The Court granted Defendant's Cross-Motion to Dismiss for lack of personal jurisdiction, but allowed Plaintiff to amend and refile her Complaint. (Doc. 138.) On December 16, 2008, Plaintiff filed an Amended Complaint reasserting claims made in her original Complaint. (Compare Doc. 1 at 13-19 with Doc. 140 at 32-38.) Defendant then filed another Motion to Dismiss based upon lack of personal jurisdiction, improper venue, and insufficient service of process. (Doc. 141.) The Court denied that Motion to Dismiss. (Doc. 201.)

Defendant then filed on September 2, 2010 a Motion to Dismiss based upon immunity under the Communications Decency Act and failure to state a claim. (Doc. 269.) Plaintiff's subsequent response to Defendant's Motion to Dismiss included a "Cross Motion for Summary Judgment." (Doc. 274.) Defendant has filed both his reply in support of the Motion to Dismiss (Doc. 275) and his response to Plaintiff's Motion for Summary Judgment (Doc. 278). Though Plaintiff's reply was due on November 1, 2010, Plaintiff never filed a reply. The Court now considers Defendant's Motion to Dismiss (Doc. 269) and Plaintiff's Motion for Summary Judgment (Doc. 274).

**STANDARDS OF REVIEW**

**I.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the plaintiff fails to state a claim, the defendant may move in a written motion, separate from the responsive pleading, that the court dismiss the claim for failure to state a claim. Fed. R. Civ.

P. 12(b)(6). Even though a complaint subject to dismissal for failure to state a claim is not required to provide "detailed factual allegations," in order for the plaintiff to meet her burden, she must present more than labels and conclusions, or a formulaic recitation of the elements of the asserted cause of action. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).[2] To survive a motion to dismiss for failure to state a claim, a plaintiff must state enough facts so that the claim is plausible on its face. Id. at 570. The Supreme Court does not require a heightened pleading standard, just enough facts to push the claim across the threshold of conceivable to plausible. Id.

When deciding a motion to dismiss, the court is bound by the facts pleaded in the complaint with a limited exception for exhibits that are attached to the complaint, exhibits incorporated by reference in the complaint, or matters of judicial notice. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003); Fed. R. Civ. P. 10(c). The court will treat all allegations of material fact in the complaint as true and construe the complaint in the light most favorable to the plaintiff. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). But "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir. 2001) (citing Associated Gen. Contractors v. Metro. Water Dist. of S. Cal., 159 F.3d 1178, 1187 (9th Cir. 1998)).

---

[2] Prior to Twombly, the standard of review for a Rule 12(b)(6) motion was established by Conley v. Gibson, 355 U.S. 41 (1957). The Court in Conley held that a complaint may only be dismissed pursuant to Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46; Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). After Twombly, however, it was unclear if the new plausibility standard applied to all civil complaints or only to antitrust complaints. Recently, the Supreme Court clarified the scope of the Twombly holding by reiterating that it applied to all civil actions. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'").

1    If the court finds that the plaintiff does not allege enough facts to support a cognizable legal theory, the court may dismiss the claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991) (citing Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985)). When exercising it discretion to deny leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

## II.    Motion for Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial." Id. at 322-23; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden

- 4 -

1  of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment
2  need not produce evidence "in a form that would be admissible at trial in order to avoid
3  summary judgment." Id. at 324. However, the nonmovant must set forth specific facts
4  addressing a genuine dispute for trial. Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co.,
5  Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint
6  Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

**I.   Successive 12(b) Motions**

Plaintiff argues that Defendant's Motion to Dismiss is procedurally defective under Fed. R. Civ. P. 12(g). (Doc. 274.) Plaintiff contends that Defendant, by earlier filing a Rule 12(b) Motion to Dismiss Plaintiff's Amended Complaint (Doc. 141) that did not raise a failure to state a claim under Rule 12(b)(6), has waived the right to assert a Rule 12(b)(6) claim. (Doc. 274.) Plaintiff alleges that Defendant "is now attempting to incorporate inappropriate and fatally untimely answers to each of Plaintiff's individual claims" by filing its Rule 12(b)(6) Motion to Dismiss. (Doc. 274 at 2.)

The Ninth Circuit allows a Rule 12(b) motion at any time before the responsive pleading is filed. Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F.2d 1470, 1474 (9th Cir. 1988). If a party makes a Rule 12(b) motion, but omits a defense or objection then available, the party typically may not raise that defense or objection in the form of a subsequent Rule 12 motion. See Fed. R. Civ. P. 12(g) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). However, as failure to state a claim is not waivable, the party may raise the defense in its answer, by motion for judgment on the pleadings, or at trial. Id. at 12(h)(2) ("Failure to state a claim upon which relief can be granted, to join a party required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.").

Further, a court has discretion to hear a successive Rule 12(b)(6) motion if it is not filed to cause delay and if it may expedite final disposition of the proceedings. See Aetna, 855 F.2d at 1475 n.2; F.T.C. v. Innovative Mktg., Inc., 654 F. Supp. 2d. 378, 383 (D. Md. 2009) ("[M]any courts have interpreted [Rules 12(g) and (h)(2)] permissively and have accepted subsequent motions on discretionary grounds."). "Since the basic purpose of Rule 12(h)(2) probably is to preserve the defenses, rather than to delimit the precise timing of their assertion, this . . . approach seems sound and within the spirit, if not the letter, of the provision." See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1392 (3d ed. 2010).

The Court will exercise its discretion to consider Defendant's 12(b)(6) motion. First, Court consideration of Defendant's Rule 12(b)(6) motion will not cause undue delay. Rather, it will expedite final disposition of the case. Defendant has not yet filed a responsive pleading. If the Court refused to hear Defendant's Motion to Dismiss at this time, Rule 12(h)(2) would permit him to raise the same issue in his Answer and Rule 12(c) motion for judgment on the pleadings. In the event that Defendant took such action, Plaintiff would then need to draft and file a response to the 12(c) motion. The Court, by considering Defendant's 12(b)(6) motion, will therefore expedite final disposition of the case and spare both parties additional expense.[3]

## II.   Immunity Under the Communications Decency Act ("CDA")

Defendant argues that Plaintiff's claims are barred by § 230 of the CDA, which "immunizes providers of interactive computer services against liability arising from content

---

[3] The Court's exercise of discretion is further warranted because Defendant's Motion to Dismiss addresses the United States Supreme Court's holding in Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010), which was issued after the filing of both of Defendant's previous motions to dismiss. (Doc. 68 (filed June 20, 2008); Doc. 141 (filed Jan. 2, 2009).) Defendant's Motion to Dismiss invokes this recent Supreme Court case as it pertains to a legitimate issue relating to Plaintiff's allegations that Defendant violated the Digital Millennium Copyright Act. (Doc. 269.)

- 6 -

created by third parties." Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2009); 47 U.S.C. § 230 ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."); (Doc. 269 at 2-4.) Section 230 immunity applies only if the "interactive computer services"[4] provider is not also an "information content provider"[5] for the alleged wrongful information. Congress, by enacting the CDA, "granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio." *See* Carafano v. Metrosplash.com, 339 F.3d 1119, 1122 (9th Cir. 2003) (citing Batzel v. Smith, 333 F.3d 1018, 1026-27 (9th Cir. 2003)).

Congress' aim in enacting the CDA was to encourage the proliferation of information and ideas on the Internet while encouraging service providers and users to monitor offensive activity within their purview. *See* Batzel, 333 F.3d at 1026-30. Congress noted that the Internet has thrived "with a minimum of government regulation," transforming into "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." 47 U.S.C. § 230(a)(4) & (5). Given Congress' conclusions, "reviewing courts have treated § 230(c) immunity as quite robust." Carafano, 339 F.3d at 1123.

---

[4]"The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

[5]"The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

- 7 -

Key in determining whether § 230 immunity applies is the extent of the interactive computer service provider's participation in the content at issue. The Ninth Circuit has held that an online newsletter was an "interactive computer service" but that its administrator was not a content provider even though he selected, lightly edited, and published the contents of a third-party's allegedly defamatory e-mail message. Batzel, 333 F.3d at 1030-32 (remanded to determine if the third-party contributor intended the e-mail for publication). The Ninth Circuit has also held that an Internet dating site was an "interactive computer service" immune from suit under § 230 when it published a false profile created by a third-party using the dating site's standard questionnaire. Carafano, 339 F.3d at 1124-25 (use of questionnaire did not equate to site performing "a significant role in creating, developing or 'transforming' the relevant information."). By contrast, a district court in the Ninth Circuit denied a defendant's motion to dismiss a defamation claim under § 230 immunity when the plaintiff alleged that the defendant created comments, headlines, and other content at issue in the lawsuit. See Hy Cite Corp. v. Badbusinessbureau.com, 418 F. Supp. 2d 1142, 1148-49 (D. Ariz. 2005). And the Ninth Circuit held that a roommate-matching website that prompted users with inquiries about racial preferences was not immune under § 230, as the interactive computer service provider had materially contributed to the alleged misconduct. Fair Hous. Council of San Fernando Valley, 521 F.3d at 1162.

Defendant argues that he is immune from suit under § 230 because Plaintiff has failed to "allege that Defendant authored any content upon which Plaintiff bases her claims." (Doc. 269 at 3.) However, in her Amended Complaint, Plaintiff alleges that Defendant not only acted as "moderator," "legal owner, copyright holder, webmaster/IT person and contributor" to two websites containing content that gave rise to Plaintiff's lawsuit, he also allegedly "actively contributes to [the websites'] content." (Doc. 140 at 5-7.) Plaintiff also contends that Defendant and others worked in collusion to post and repost materials about Plaintiff. (Doc. 140 at 30). Based upon Plaintiff's allegations, Defendant arguably was an "information content provider" who is "responsible, in whole or in part, for the creation or

1  development of information" allegedly posted about Plaintiff.  § 230(f)(2)-(f)(3).  Thus, the
2  Court will not dismiss Plaintiff's claims under § 230 at this stage of the litigation.

3  **III.    Defendant's Motion to Dismiss Plaintiff's Claims**

4  **1.     Intentional Infliction of Emotional Distress**

5  Defendant argues that Plaintiff's Amended Complaint fails to state a claim for
6  intentional infliction of emotion distress.  (Doc. 269 at 4-5.)  To establish a claim for
7  intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the
8  defendant's conduct was "extreme" and "outrageous"; (2) the defendant either intended to
9  cause emotional distress or recklessly disregarded the near certainty that such distress would
10 result from the conduct; and (3) severe emotional distress occurred as a result of defendant's
11 conduct.  Ford v. Revlon, Inc., 734 P.2d 580, 585 (Ariz. 1987).  The conduct must go beyond
12 all bounds of decency.  Id.;  Johnson v. McDonald, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999).
13 The Restatement (Second) of Torts explains that the "extreme" and "outrageous" conduct
14 cannot merely be insults.  § 46 cmt. d (1965).  Others must have the right to express
15 unflattering opinions.  Id.

16 The Restatement provides as an example of "extreme" and "outrageous" a person
17 confronted by another with perceived authority who tells the person in front of peers that if
18 he does not both cease his normal activities and provide monetary payment, he will be beaten
19 and his property will be destroyed.  Id. at cmt. d, illus. 2.  Another example of conduct that
20 is "extreme" and "outrageous" is illustrated by Ford.  Although the issue in Ford concerns
21 an employment action it illustrates the high standard required for prevailing in Arizona on
22 a claim for intentional infliction of emotional distress.  734 P.2d at 585.  In Ford, the plaintiff
23 demonstrated that she was subjected to repeated sexual advances and graphic harassment by
24 her immediate supervisor.  Id. at 581-82.  In addition to the supervisor's conduct, the
25 defendant failed to correct the behavior after the plaintiff had done everything in her power
26 to redress the situation.  Id. at 585.  The plaintiff was left powerless for months as the
27 defendant dragged out the situation.  Id.

28

- 9 -

1    By contrast, an illustration of conduct that would not be considered "extreme" and 2 "outrageous" is a person calling a phone operator, getting frustrated with his service, then 3 threatening to injure the operator, insulting him, and calling into question his credibility. 4 Restatement (Second) of Torts § 46 cmt. d, illus. 4.  The caller is not liable for the injury that 5 the operator might suffer, even though such conduct is insulting.  Id.

6    Plaintiff's case has similarities to all three examples, but most resembles the third. 7 Plaintiff alleges that she was insulted by people posting comments on the Internet. (Doc. 140 8 at 5.)  Despite allegations of "venomous e-mails" written to a pseudonym she had created, 9 Plaintiff does not offer specific information on the source, content, or timing of the e-mails. 10 (Doc. 140 at 5.)  Though the alleged conduct may be viewed as insulting, it does not go 11 beyond all bounds of decency.  Ford, 734 P.2d at 585; Johnson, 3 P.3d at 1080.

12    The high standard required to make a claim for intentional infliction of emotional 13 distress is not satisfied by the facts as Plaintiff alleges them.  Ford, 734 P.2d at 585.  First, 14 the statements as alleged in Plaintiff's Amended Complaint fail to rise to the level of 15 "extreme" or "outrageous."  Id.  Second, the facts as Plaintiff presents them fail to show the 16 possibility that Defendant intentionally tried to emotionally injure Plaintiff, or that Defendant 17 recklessly disregarded that such injury would occur.  Id.  Third, Plaintiff fails to allege any 18 facts that show Defendant caused her the type of injury required by an intentional infliction 19 of emotional distress claim.  Ford, 734 P.2d at 585.  Therefore, the Court dismisses the 20 intentional infliction of emotional distress claim against Defendant with prejudice.

21 **2.    Defamation**

22    Defendant argues that Plaintiff's Amended Complaint fails to state a claim for 23 defamation.  (Doc. 269 at 5-6.)   Someone who publishes a false and defamatory 24 communication about a private person is subject to liability if that person "'(a) knows that 25 the statement is false and it defames the other, (b) acts in reckless disregard of these matters, 26 or (c) acts negligently in failing to ascertain them.'"  Dube v. Likins, 167 P.3d 93, 104 (Ariz. 27 Ct. App. 2007) (quoting Rowland v. Union Hills Country Club, 757 P.2d 105, 110 (Ariz. Ct.

28

1  App. 1988)).  An absolute defense to a defamation claim is substantial truth.  Heuisler v.
2  Phoenix Newspapers, Inc., 812 P.2d 1096, 1103 n.4 (Ariz. Ct. App. 1991); Fendler v.
3  Phoenix Newspapers, Inc., 636 P.2d 1257, 1261 (Ariz. Ct. App. 1981).  The defendant does
4  not have to prove the literal truth of every statement, only that the statements are
5  substantially true.  Fendler, 636 P.2d at 1261 (citing Restatement (Second) of Torts, § 581(a)
6  (1977)).  Slight inaccuracies do not prevent the statement from being true in substance, so
7  long as the general meaning of the statement is justified.

8        Plaintiff alleges that Defendant's website stated that Plaintiff is a "'Child Molester,'
9  'Convicted Child Molester,' 'Convicted Child Abuser,' a 'Predator,' a 'Pedophile' and 'Pro-
10  pedophile'" and that she "starved a child."  (Doc. 140, at 5, 35.)  Defendant argues that
11  Plaintiff has admitted in a response to a motion to dismiss in this case that she was convicted
12  of misdemeanor sexual conduct with a minor.  (Doc. 269 at 6 (citing Doc. 26).)  Further,
13  Plaintiff noted in her Amended Complaint that she has spoken "out against sex offender
14  laws."  (Doc. 140 at 5.)  Though a misdemeanor for sexual conduct with a minor does not
15  automatically lead to the conclusion that Plaintiff is a "'Child Molester,' 'Convicted Child
16  Molester,' 'Convicted Child Abuser,' a 'Predator,' a 'Pedophile' and 'Pro-pedophile,'" (Doc.
17  140 at 35) the general meaning of the statements do not show the sort of negligence or
18  reckless regard for truth that could support a defamation claim.

19        However, Plaintiff's allegation that Defendant's website stated that Plaintiff "starved
20  a child" (Doc. 140 at 5) meets the pleading requirements for a defamation claim.  See Dube,
21  167 P.3d at 104.[6]  The statement that Plaintiff "starved a child" appears not to resemble any
22  of Plaintiff's admitted conduct.  Defendant may be able to later demonstrate either that he

---

[6] Plaintiff incorporated by reference this allegation into her Defamation claim (Doc. 140 at 35), as it is contained in the "Introduction" of Plaintiff's Amended Complaint. (Doc. 140 at 5.)  The placement of this allegation is not ideal, but the United States Supreme Court has instructed that the pleadings of pro se litigants such as Plaintiff should be construed liberally.  Boag v. MacDougall, 454 U.S. 364, 365 (1982).

- 11 -

did not write or contribute to the statement that Plaintiff "starved a child," that no such statement was ever published about Plaintiff, or that the statement is substantially true. However, given the potentially actionable nature of the statement that Plaintiff "starved a child," the Court cannot dismiss Plaintiff's defamation claim at this stage in the case.

**3.     Racketeer Influenced and Corrupt Organizations Act ("RICO")**

Defendant contends that Plaintiff did not allege sufficient and specific facts to support a claim under RICO. (Doc. 269 at 5-6.) A plaintiff must allege enough specific facts to plausibly satisfy all four elements of a RICO claim: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" E.g., Walter v. Drayson, 538 F.3d 1244, 1247 (9th Cir. 2008) (quoting Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007)). A "'pattern of racketeering activity'" requires two or more racketeering acts within ten years. 18 U.S.C. § 1961(5) (2006). "Racketeering activity" is one of the several indictable acts listed under § 1961(1). Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996).

The Court gives Plaintiff as much latitude as possible, but nonetheless finds insufficient facts to support any of the indictable acts listed in 18 U.S.C. § 1961(1).[7] Plaintiff makes general and conclusory statements about the predicate acts and does not provide

---

[7] Plaintiff specifically alleges in her Amended Complaint:
> 3. The predicate acts which constitute this pattern of racketeering activity are:
> A. Sending mass e-mails, creating multiple webpages, blog pages, and internet bulletins accusing Plaintiff, among other things as being a "child [m]olester" and "pedophile."
> B. Encouraging and directing their associates and the general public to post and repost said information, encouraging their associates and the general public to undertake other criminal acts against Plaintiff including e-mails to harass, trespassing, criminal damage to property and bodily harm to Plaintiff, etc.
> C. Encouraging and directing their associates, individuals, and the general public to contact and threaten business entities with which the Plaintiff has ties.

(Doc. 140 at 36-37.) However, none of these allegations add up to an indictable act under § 1961(1).

- 12 -

1  Defendant, or the Court with the specificity required to push the claim across the threshold
2  from implausible to plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
3  Given this absence of required information, the Court finds that Plaintiff's RICO claim is not
4  plausible.[8]  First, Plaintiff failed to plead a racketeering act to support a RICO action.
5  Second, Plaintiff does not allege a pattern of racketeering activity.  Absent one instance of
6  a racketeering activity, by definition there cannot be a second racketeering activity. See 18
7  U.S.C. § 1961(5).  Plaintiff has failed to plead the necessary allegations to support the pattern
8  requirement of a RICO action.  See id.

Given Plaintiff's failure to allege a specific racketeering act or pattern of racketeering activity, the Court finds that Plaintiff has not sufficiently pleaded the required elements of a RICO action against Defendant.  Therefore, the Court dismisses Plaintiff's RICO claim with prejudice.

**4.      Cyberstalking and Cyberharassment**

Defendant asserts that Plaintiff has failed to state a claim for cyberstalking and cyberharassment. (Doc. 269 at 7.)  In her Amended Complaint, Plaintiff makes a claim for relief under 18 U.S.C. § 2261A(2) (Doc. 140 at 37-38), which is a criminal statute.  18 U.S.C. § 2261A(2) (2006).  Possible punishments for violation of § 2261A(2), as outlined in 18 U.S.C. § 2261(b), include prison time, a monetary fine, or both.  Nowhere does 18 U.S.C. § 2261(a)(2) provide a private right of action or recovery.  Because there is not a private right of action or recovery under 18 U.S.C. § 2261A(2), Plaintiff's claim under this statute is dismissed with prejudice.

---

[8]Plaintiff has merely reformulated her defamation and copyright claims as a RICO action under the guise of wire fraud. Cf. Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996) (holding that the plaintiff's RICO claim was a reformulated copyright infringement claim, and without the infringement, the mail and wire fraud would not have existed).

### 5. **Digital Millennium Copyright Act ("DMCA")**

Defendant alleges that Plaintiff failed to state a claim under the DMCA because Plaintiff has failed to register the works she claims are protected. (Doc. 269 at 8.) The United States Constitution grants Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors . . . the exclusive Right to their . . . Writings." Art. 1, § 8, cl. 8. As a means of exercising this power, Congress has developed a statutory scheme governing the existence and scope of copyright protection for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). This scheme gives copyright owners "exclusive rights" to distribute, reproduce, or perform their works publicly. Id. § 106. Anyone who violates any of the copyright holder's exclusive rights as set forth in the Copyright Act is an "infringer of the copyright." Id. § 501(b). With limited exceptions, the Copyright Act "requires copyright holders to register their works before suing for copyright infringement." Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237, 1242 (2010) (citing 17 U.S.C. § 411(a)).[9]

In her Amended Complaint, Plaintiff alleges that Defendant created a "website . . . on multiple duplicitous WebPages throughout the internet" where "copyrighted photographs of Plaintiff and excerpts of articles written [b]y Plaintiff which are clearly protected by copyright notice . . . ." (Doc. 140 at 38.) However, nowhere in her Amended Complaint does Plaintiff allege any facts showing that she registered either the images or written materials with the United States Copyright Office. (Doc. 140.) Further, at a January 11, 2010 Preliminary Pretrial Conference in Plaintiff's case, the Court questioned Plaintiff

---

[9]These exceptions include where the work is not a United States work, where the infringement claim concerns rights of attribution and integrity under section 106A, or where the copyright holder attempts to register the work and registration is refused. Additionally, section 411(c) allows courts to adjudicate infringement actions involving certain types of unregistered works where the author "declare[s] an intention to secure copyright in the work" and "makes registration for the work, if required by subsection (a), within three months after [the work's] first transmission." 17 U.S.C. §§ 411(c)(1)-(2).

- 14 -

1 regarding the apparent lack of registration of the materials allegedly used without Plaintiff's
2 permission. (Doc. 240 at 5:12-16.) In response, Plaintiff admitted that none of the
3 photographs were "federally registered." (Doc. 240 at 5:17-21; Doc. 247.) The writings
4 similarly were not registered. In its May 7, 2010 Order (Doc. 252), the Court took judicial
5 notice of an excerpt from the transcript of the January 11, 2010 Preliminary Pretrial
6 Conference, which included Plaintiff's admissions about her failure to register her works.

7 Absent a registered copyright, Plaintiff cannot meet the requirements for filing a
8 federal Copyright Action under 17 U.S.C. § 411. Reed Elsevier, 130 S.Ct. at 1242 (2010);
9 Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211 (9th Cir. 1998) ("Copyright
10 registration is not a prerequisite to a valid copyright, but it is a prerequisite to a suit based on
11 a copyright."). Section 411(a) states that "no civil action for infringement of the copyright
12 in any United States work shall be instituted until preregistration or registration of the
13 copyright claim has been made in accordance with this title." In Reed Elsevier, the Supreme
14 Court made copyright registration a prerequisite for bringing a federal lawsuit. 130 S.Ct. at
15 1242. Plaintiff has failed to allege any facts in her Amended Complaint showing that she
16 either applied for or received a copyright registration for the four photographs or written
17 materials. (Doc. 140.) Moreover, Plaintiff admitted at the Preliminary Pretrial Conference
18 that she has never registered any of her photographs or written materials. Therefore, the
19 Court dismisses Plaintiff's copyright infringement claim with prejudice

20 **6.    Prima Facie Tort**

21 Defendant contends that Plaintiff fails to state a claim because prima facie tort is not
22 recognized as a legitimate cause of action in Arizona. (Doc. 269 at 8.) After extensive
23 research, the Court has not found a single Arizona case in which a court allowed the plaintiff
24 to recover under a prima facie tort theory of liability. Restatement (Second) of Torts § 870
25 discusses liability of intended consequences, which has been given the prima facie tort title
26 in some states. See generally W.E. Shipley, Annotation, Comment Note--Prima Facie Tort,
27 16 A.L.R.3d 1191 (1967). But Arizona courts have not adopted the theory of recovery and
28

1 have recognized that in jurisdictions where the theory has been recognized, the theory has
2 only been adopted in the limited circumstances that no other theory for recovery exists.
3 Rutledge v. Phoenix Newspapers, Inc., 715 P.2d 1243, 1246 (Ariz. Ct. App. 1986), *overruled*
4 *on other grounds by* Godbehere v. Phoenix Newspapers, Inc., 783 P.2d 781 (Ariz. 1989).
5 If Plaintiff were allowed to proceed on the prima facie tort claim, it would be the first such
6 action in Arizona.

7 The Court, however, in a related action, treated Plaintiff's prima facie tort claim as
8 a negligence claim. (See Doc. 150.) In order to prove that a defendant was negligent, a
9 plaintiff must show the existence of a duty, a breach of that duty, causation, and damages.
10 E.g., Bloxham v. Glock Inc., 53 P.3d 196, 199 (Ariz. Ct. App. 2002). The existence of duty
11 is a threshold issue: if the plaintiff does not sufficiently demonstrate duty, the defendant
12 cannot be held liable for negligence. Id.

13 Plaintiff does not present any facts to establish that Defendant owed her a duty of care.
14 Without any evidence to establish a duty, the Court cannot reach the other elements of the
15 negligence action. The Court, treating the prima facie tort action as a negligence action,
16 dismisses the prima facie tort claim against Defendant with prejudice.

17 **IV.    Plaintiff's Motion for Summary Judgment**

18 Plaintiff has filed a Motion for Summary Judgment. (Doc. 274.) However, Plaintiff
19 provides no support for her argument that summary judgment in her favor would be
20 appropriate. Rather, Plaintiff argues that "Defendant would suffer no harm or due process
21 violations if Plaintiff['s] Motion for Summary/Default judgment as a matter of law and based
22 upon the pleadings was to be granted at this time." (Doc. 274 at 5.) Absent Plaintiff
23 "show[ing] that there is no genuine dispute as to any material fact and th[at] [she] is entitled
24 to judgment as a matter of law," the Court must deny Plaintiff's Motion for Summary
25 Judgment. Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
26 Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).

27
28

Further, Plaintiff's Motion for Summary Judgment does not comply with the Local Rules of Civil Procedure. Under Local Rule 56.1, "[a]ny party filing a motion for summary judgment shall file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion . . . A failure to submit a separate statement of facts in this form may constitute grounds for the denial fo the motion." LRCiv 56.1(a). Here, Plaintiff has failed to file the required statement of facts outlining each material fact that supports her case, and thus, this is an independent reason for denying the motion.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 269) Plaintiff's Amended Complaint (Doc. 140) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 269) is **GRANTED** as to Plaintiff's Claims for Intentional Infliction of Emotional Distress, Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, Cyberstalking and Cyberharassment, Digital Millennium Copyright Act ("DMCA") violations, and Prima Facie Tort.

**IT IS FURTHER ORDERED** that Claims III (Intentional Infliction of Emotional Distress), V (RICO violations), VI (Cyberstalking and Cyberharassment), VII (DMCA violations), and VIII (Prima Facie Tort) of Plaintiff's Amended Complaint (Doc. 140) are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 269) is **DENIED** as to Claim IV (Defamation).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 274) is **DENIED**.

DATED this 17th day of November, 2010.

Stephen M. McNamee
United States District Judge